**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

AIRGAS USA, LLC,

Plaintiff,

v.

TEAMSTERS LOCAL 542, et al.,

Defendants.

Case No.:  3:25-cv-01889-RBM-MMP

**ORDER GRANTING DEFENDANT INTERNATIONAL BROTHERHOOD OF TEAMSTERS' MOTION TO DISMISS AMENDED COMPLAINT**

**[Doc. 10]**

Pending before the Court is Defendant International Brotherhood of Teamsters' ("IBT") Motion to Dismiss Amended Complaint ("Motion to Dismiss"). (Doc. 10.) Plaintiff Airgas USA, LLC ("Plaintiff") filed an Opposition to the Motion to Dismiss ("Opposition") (Doc. 14) and IBT filed a Reply (Doc. 15).

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons discussed below, the Motion to Dismiss (Doc. 10) is **GRANTED**.

//

//

//

1

## I.    BACKGROUND

**A.    Factual Background[1]**

Plaintiff is a supplier of "industrial, medical, and specialty gases." (Doc. 4, Amended Complaint for Breach of Contract Under Section 301 of the Labor Management Relations Act ["FAC"] ¶ 8.) IBT and Defendant Teamsters Local 542 ("Local 542") (collectively, "Defendants") are "labor organization[s] representing employees in an industry affecting commerce." (*Id*. ¶¶ 9–10.) Local 542 is the exclusive bargaining representative for Plaintiff's employees at its San Diego facility. (*Id*. ¶ 10.)

### 1.    CBA

Plaintiff and Local 542 entered into a collective bargaining agreement ("CBA") on June 1, 2024, which is effective until May 31, 2027. (*Id*. ¶¶ 3, 13.) Article 21 of the CBA contains a "Crossing Picket Lines" provision which states, in relevant part:

> The Union is not in favor of picket lines and will do everything in its power to prevent the extension of such to the location covered by [the CBA] and will not require its members to recognize any such picket until it has been approved by the Joint Council of the Teamsters in the territory in which the strike takes place.

(*Id*. ¶ 14.) Article 22 of the CBA contains a "No Strike or Lockout" provision that states:

> During the term of [the CBA], or any extension of [the CBA], the Employer shall not lock out the employees covered by [the CBA], and no strike shall be engaged in or sanctioned by the Union or its members, and neither the Union, nor any of its members or representatives, nor any employee, shall call, cause, authorize, ratify or engage in any sit-down, stay-in, sympathy strike or other strike, picketing, walkout, slowdown, or work stoppage, or any other interference with production or stoppage of work.

(*Id*.)

---

[1] This factual summary reflects Plaintiff's allegations, not conclusions of fact or law by this Court. Well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3:25-cv-01889-RBM-MMP

### 2. The New Jersey Strike

IBT Local 701, who is not a party to this action, represents workers at Plaintiff's New Jersey facility.  (*Id.* ¶ 15.)  IBT Local 701 was unable to reach an agreement with Plaintiff prior to the expiration of their collective bargaining agreement and went on strike on June 2, 2025.  (*Id.* ¶¶ 16–18.)  IBT Local 701 was still on strike at the time Plaintiff filed the Amended Complaint.  (*Id.* ¶ 18.)

### 3. The Ohio Strike

IBT Local 507, who is not a party to this action, represents workers at Plaintiff's Ohio facility. (*Id.* ¶ 19.)  IBT Local 507 was unable to reach an initial collective bargaining agreement with Plaintiff and went on strike on June 23, 2025.  (*Id.* ¶¶ 20–21.)  IBT Local 507 was still on strike at the time Plaintiff filed the Amended Complaint.  (*Id.* ¶ 21.)

### 4. Picket Lines

"On July 22, 2025 the IBT publicly communicated that '[t]he Teamsters have expanded their nationwide strike against [Plaintiff],' from facilities in North Brunswick, New Jersey and Cleveland, Ohio to locations in other states, including California."  (*Id.* ¶ 22.)  "The IBT stated that [Plaintiff] is 'facing a major disruption to its operations' as a result of these actions.'" (*Id.*)  That same day, picketers were stationed outside of Plaintiff's San Diego facility wearing t-shirts that said "Local 507." (*Id.* ¶ 23.)  "The vast majority of Plaintiff's employees at the San Diego facility refused to cross the picket line and did not appear for work." (*Id.*)  "The picket line in front of the San Diego facility returned on July 23 and 24, 2025, and once again Plaintiff's employees . . . refused to cross the picket line and did not appear for work." (*Id.* ¶ 24.)  "On July 29, 2025, after workers at [Plaintiff's] facility in Hawaii went on strike," the Director of the Teamsters Tankhaul Division and Teamsters International Vice President At-Large, Juan Campos, stated:

> Airgas picked a fight with the Teamsters from across the country, and Hawaii is now part of our fight, too. . . This company will be held accountable for its greed, its incompetence, and its total disregard for its workforce.  Our members will never back down until they get the contracts they deserve.

(*Id.* ¶ 25.)

3

3:25-cv-01889-RBM-MMP

A flyer was distributed at the San Diego facility in which "Local 542 admitted that it could not call a sympathy strike because the CBA prohibited such a strike, but it promised any employee $1,000 a week if they did not cross a picket line." (*Id*. ¶ 26.) During the picketing, IBT paid Local 542's bargaining unit members $1,000 a week from its "Strike and Defense Fund." (*Id*. ¶ 27.) Moreover, several of Plaintiff's employees "reported that Union representatives contacted them on July 22 and 23, 2025 and attempted to persuade them to honor the strike and not cross the picket line." (*Id*. ¶ 29.)

Plaintiff continued to provide services to its customers "including medical facilities that require Plaintiff's products in order to operate on and care for patients." (*Id*. ¶ 33.) To continue operating and delivering its products during the strikes, and as a result of Local 542's alleged breaches of the CBA, Plaintiff incurred approximately $200,000 in additional costs. (*Id*. ¶¶ 34–35)

**B.     Procedural History**

On July 25, 2025, Plaintiff initiated this action against Local 542 and IBT for breach of contract under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (Doc. 1.) On August 15, 2025, Plaintiff filed the operative FAC. (Doc. 4.) Plaintiff alleges that Local 542, acting in concert with IBT, breached the "Crossing Picket Lines" and "No Strikes or Lockouts" provisions of the CBA in July 2025 when it "called, caused, authorized, ratified, and engaged in strikes and picketing at the San Diego facility and incentivized and encouraged employees to participate in that strike." (*Id*. ¶¶ 5, 37, 41.) Plaintiff requests declaratory judgment and monetary damages. (*Id*. at 8, Prayer for Relief ¶¶ 1–2.) On August 29, 2025, Local 542 filed an Answer to the Amended Complaint. (Doc. 9.) IBT filed the instant Motion to Dismiss that same day. (Doc. 10-1.)

## II.     <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (cleaned up).

### III.  DISCUSSION

IBT seeks to dismiss the LMRA § 301 claim against it for breach of contract because: (1) IBT is not a party or signatory to the CBA; and (2) Plaintiff fails to plausibly allege Local 542 was acting as IBT's agent. (Doc. 10-1 at 9–20.) Plaintiff contends it "has sufficiently pled facts to support a claim that the IBT is liable because it was acting as an agent or alter-ego of Local 542." (Doc. 14 at 8.)[2] Specifically, Plaintiff claims IBT made

---

[2] As Plaintiff provides no further explanation or argument in support of its alter ego theory, the Court declines to address this issue. *See Khademi v. South Orange Cnty. Cmty. College Dist.*, 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002) ("A judge is . . . neither required to hunt down arguments [the parties] keep camouflaged, nor required to address perfunctory and undeveloped arguments . . . [T]o the extent that [Defendant] failed to develop any additional argument[s] or provide any legal support for them, [it] has waived them.") (citation omitted)); *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 782 (N.D. Cal. 2011) (holding the plaintiff failed to support invocation of the alter ego doctrine as "broad allegations are not sufficient to show a unity of interest and ownership.").

3:25-cv-01889-RBM-MMP

affirmative statements and payments "in conjunction with Local 542 to encourage and direct employees to engage in a work stoppage at the San Diego facility in violation of the CBA." (*Id.* at 9.)

Section 301 of the LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . ., or between any such labor organizations . . . ." 29 U.S.C. § 185(a). An employer "can bring a breach-of-contract claim under LMRA § 301(a) against [a local union] as a CBA signatory, and against IBT as [the local union's] agent or alter ego." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 309 (2010). Common law agency principles determine whether an agency relationship exists between an international union and one of its local affiliates. *Laughon v. Int'l Alliance of Theatrical Stage Emp., Moving Picture Technicians, Artists & Allied Crafts of the U.S. & Can.*, 248 F.3d 931, 935 (9th Cir. 2001); *see Aguirre v. Auto. Teamsters*, 633 F.2d 168, 172 (9th Cir. 1980) ("By enacting [§] 185(e), Congress was merely reaffirming application of common law doctrines of agency to labor law.") (citations omitted). An international union will not be held vicariously liable for the actions of a local union unless there is "evidence that [the international union] instigated, supported, ratified or encouraged the [l]ocal's activities or that the [l]ocal acted pursuant to its agreement with" the international union. *Moore v. Loc. Union 569 of Int'l Bhd. of Elec. Workers*, 989 F.2d 1534, 1543 (9th Cir. 1993), *as amended* (June 28, 1993) (citing *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 218 (1979)). "[I]f the local engages in illegal conduct in furtherance of its role as an agent of the international, the international will be liable for the local's actions." *Laughon*, 248 F.3d at 935. "However, if the local exercises considerable autonomy in conducting its affairs, it cannot be regarded as an agent of the international, and the international accordingly cannot be held liable under an agency theory for the local's actions." *Id*.

As a preliminary matter, Plaintiff fails to plead any of the traditional indicia of an agency relationship such as the "nature and extent of actual control" between the two unions. *See Laughon*, 248 F.3d at 935 (setting forth factors to determine the existence of

an agency relationship).  The FAC does not mention agency, identify which union is the other's agent, describe an actual relationship between the two unions, or as IBT notes, "cite[ ] any provisions of either Defendant's governing documents to support its agency claim." (Doc. 10-1 at 10 n.2.)  Rather, Plaintiff alleges that "Local 542, acting in concert with the IBT," violated Articles 21 and 22 of the CBA.  (Doc. 4 [FAC] ¶¶ 5, 7, 37, 41.) Such conclusory allegations lack any factual support to state a claim based on agency.  *See Maurer v. Int'l Bhd. of Elec. Workers*, 200 F. Supp. 3d 1052, 1062 (S.D. Cal. 2016) ("[T]he Court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Iqbal*, 556 U.S. at 678).[3]  Indeed, Plaintiff's allegations suggest that it seeks to hold IBT *jointly* liable for its own actions taken "in concert" with Local 542 (*see* Doc. 14 at 7–8, 10, 12, 14–15, 17), as opposed to imposing vicarious liability for Local 542's actions as its agent.  *See Samson Tug & Barge Co. v. Int'l Longshore & Warehouse Union*, Consolidated Case Nos. 3:20-cv-00108-TMB, 3:20-cv-00248-TMB, 2023 WL 3255850, at *2 (D. Alaska May 4, 2023) (distinguishing joint liability "based upon a party's actions *taken in concert* with another [liable party]," from "an international union's vicarious liability, which imposes an 'indirect responsibility' for another's actions.") (emphasis added).  But as IBT is not a party to the CBA, its "liability, if any, must result from the fact that it induced a breach of contract by" Local 542.  *Wilkes-Barre Pub. Co. v. Newspaper Guild of Wilkes-Barre, Loc. 120*, 647 F.2d 372, 382 (3d Cir. 1981); *see also BE & K Const. Co. v. United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 90 F.3d 1318, 1326–27 (8th Cir. 1996) (finding plaintiff failed to establish an agency relationship where there was

---

[3]  To the extent Plaintiff claims IBT "orchestrated" a nationwide strike (*see* Doc. 14 at 7, 14–15), the FAC does not contain such factual allegations and the Court does not consider them in determining the sufficiency of Plaintiff's pleading. *See Marron v. Saha*, Case No.: 19cv1344-BAS (MSB), 2020 WL 2467062, at *3 (S.D. Cal. May 13, 2020) ("[A] plaintiff's opposition to a motion to dismiss does not constitute [a] pleading[ ], and thus 'new' allegations raised in a plaintiff's opposition to a motion to dismiss are not considered when resolving a motion to dismiss.") (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018)).

insufficient evidence of control and "cooperation in the spirit of labor solidarity does not transform one union into the agent of another."). Thus, Plaintiff fails to sufficiently allege the existence of an agency relationship between the international and the local unions.

Plaintiff also fails to set forth facts demonstrating that IBT instigated, supported, ratified, and encouraged Local 542's actions in alleged breach of the CBA. The FAC references conduct attributable to IBT on three occasions—two public statements issued on July 22, 2025 and July 29, 2025, and IBT's payment of strike benefits to Local 542's bargaining unit members. (Doc. 4 [FAC] ¶¶ 22, 25.) Plaintiff contends IBT's statement issued on July 22, 2025, constitutes a "public[ ] admis[sion] [that] it intended to cause a 'nationwide strike' to interfere with [Plaintiff's] operations." (Doc. 14 at 13.) However, nothing in IBT's statement reflects such an intent. The July 22nd statement did not concern or mention Local 542 and there are no facts to otherwise indicate that IBT was instigating, supporting, or encouraging *Local 542's* alleged picketing activities. *See Feather v. United Mine Workers of Am.*, 903 F.2d 961, 970 (3d Cir. 1990) ("The [international] union must have 'instigated, supported, ratified or encouraged *the activity complained of.*'") (quoting *Kerry Coal Co. v. United Mine Workers of Am.*, 637 F.2d 957 (3d Cir. 1981)) (emphasis added). In a similar vein, the Teamster International Vice President At-Large's statement on July 29, 2025, was issued after picketing had begun at the San Diego facility and makes no mention of Local 542 or any facts reflecting its ratification of *Local 542's* conduct at issue. Neither IBT's public statements nor the facts alleged indicate that IBT was aware of *Local 542's* alleged actions to extend the picket line and cause a work stoppage in breach of the CBA, let alone that IBT supported, ratified, or encouraged such actions. *See Corns v. Laborers Int'l Union of N. Am.*, 62 F. Supp. 3d 1105, 1114 (N.D. Cal. 2014) ("[R]atification can only occur when the principal, having knowledge of the material facts involved in a transaction, evidences an intention to ratify it.") (quoting *Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union*, 817 F.2d 967, 973 (2d Cir. 1987)).

Plaintiff also alleges that IBT encouraged employees not to cross the picket line by issuing strike benefits, which Local 542 had promised to employees, from the time

8

3:25-cv-01889-RBM-MMP

picketing began.  (Doc. 4 [FAC] ¶¶ 26–27.)  In its Opposition, Plaintiff argues that IBT issued such payments with knowledge of Local 542's alleged breach, with the intent "to ratify any such breach," and "in an effort to cause a strike in violation of the CBA."  (Doc. 14 at 15 (quoting Doc. 10 at 19).)  But as previously noted, the FAC pleads no facts supporting such knowledge or intent.  Nor does the FAC contain facts indicating that Local 542 advertised the strike benefits "in furtherance of its role as" IBT's agent.  *See Laughon*, 248 F.3d at 935.  Indeed, the mere "fact that IBT authorized the . . . payment of worker benefits stemming from a proposed strike . . . does not evidence that IBT was a principal actor in this case."  *Teamsters Loc. Union No. 89 v. Kroger Co.*, No. 3:07–CV–351TBR, 2009 WL 859815, at *9 (W.D. Ky. Mar. 27, 2009), *judgment entered*, No. 3:07-CV-351-TBR, 2009 WL 2487362 (W.D. Ky. Aug. 14, 2009), *and aff'd*, 617 F.3d 899 (6th Cir. 2010) (noting the lack of actual payment was not critical to the court's finding that IBT's authorization of such payments, alone, did not demonstrate IBT was a principal actor).

While Plaintiff contends "[s]trike benefits paid to union members can . . . demonstrate agency" (Doc. 14 at 15), it relies on selective and misleading quotes from cases that are either distinguishable or inapposite.  (*See* Doc. 15 at 6–7.)  And the cases that did involve an agency claim made clear that such a claim requires more than the payment of strike benefits for purposes of establishing an international union's liability for a local union's actions.  *See, e.g.*, *Granite Rock v. Teamsters*, 561 U.S. 287, 313 (2010) (rejecting employer's argument that common law breach of contract claims "are difficult to prove against non-CBA signatories like IBT" where "the record in [that] case suggests it might be easier to prove than usual if . . . IBT and Local were affiliated . . . in a way relevant to [the employer's] claims."); *Overnite Transp. Co. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 257 N.C. 18, 27 (1962) ("The contribution to the expenses of maintaining the strike made by International, the active participation of its Locals . . . *under trusteeship, and by its Joint Council No. 9*, sufficiently show that International was using the locals as its hands and arms to carry on the strike throughout the area according to plans which originated in its own head.") (emphasis added).  As the

3:25-cv-01889-RBM-MMP

Supreme Court has noted, "it would be inconsistent with the fabric of national labor policy to infer ratification from the mere fact that [the union] involved itself in the dispute *after* the violence had occurred, or from the fact that it carried on some normal union functions, such as provision of strike relief [which a] union would ordinarily undertake . . . during the course of a lawful strike." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 738–39 (1966) (emphasis added) (reversing an award of damages against a union in an action for violations of LMRA § 303).

Plaintiff therefore fails to plead a plausible basis for holding IBT liable for Local 542's alleged breach of the CBA as required under LMRA § 301(b) and (e). Accordingly, the Motion to Dismiss is **GRANTED** and the LMRA § 301 claim against IBT is **DISMISSED WITH LEAVE TO AMEND**. *See* Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave [to amend] when justice so requires.").[4]

## IV.   CONCLUSION

Based on the foregoing reasons, IBT's Motion to Dismiss (Doc. 10) is **GRANTED**. Plaintiff's claim against IBT is therefore **DISMISSED WITH LEAVE TO AMEND**. Plaintiff may file an amended complaint curing the identified deficiencies **on or before March 31, 2026**.

**IT IS SO ORDERED**.

DATE:  February 25, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff asserts several allegations against Defendants collectively which are insufficient to state a claim against IBT. *See Gayton v. Fidani*, Case No. 2:20-cv-06758-MCS-JDE, 2021 WL 964253, at *8 (C.D. Cal. Feb. 22, 2021), *report and recommendation adopted*, No. 2:20-cv-06758-MCS-JDE, 2021 WL 964037 (C.D. Cal. Mar. 15, 2021) ("Conclusory allegations in which Plaintiff[ ] refer[s] to the actions of all Defendants collectively, without any differentiation or explanation, are insufficient to state a claim for relief that is plausible on its face.").